# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:21-CV-257-RJC-DCK

| | |
|---|---|
| CALVIN T. MEEK, Executor of the Estates of Jackson T. Meek and Ruth Jordan Meek,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITRIN SAFEGUARD INSURANCE COMPANY, and TRINITY UNIVERSAL INSURANCE COMPANY, d/b/a KEMPER PREFERRED,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　**MEMORANDUM AND**<br>)　**RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER IS BEFORE THE COURT** on Defendants' "Motion To Dismiss" (Document No. 5). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u>.

### I. BACKGROUND

Plaintiff Calvin T. Meek ("Plaintiff" or "Meek") initiated this action with the filing of a "Complaint" (Document No. 1-1) in Mecklenburg County Superior Court on March 31, 2021 against Defendants (1) Unitrin Safeguard Insurance Company ("Unitrin"), and (2) Trinity Universal Insurance Company, doing business as Kemper Preferred (collectively, "Defendants" or "Kemper"). Meek is the Executor of the Estates of his parents, Jackson T. Meek and Ruth Jordan Meek, both of whom died in a car accident in April 2018. (Document No. 1-1, pp. 1, 3-4). Plaintiff's claims arise out of that car accident and the alleged mishandling of the insurance claim

by the at-fault driver's insurance company, Kemper. According to Plaintiff's Complaint, both Unitrin Safeguard Insurance Company and Trinity Universal Insurance Company do business under the name of Kemper Preferred. Id. at pp. 2-3.

Plaintiff alleges that the teenage at-fault driver, Dylan Gibbs, lost control of his car while driving 95 miles per hour in a 45 mile-per-hour speed zone and crossed the center line of the roadway, striking Plaintiff's parents' car that was traveling in the opposite direction. Id. at p. 3. Plaintiff's father died the same day as the accident, and Plaintiff's mother died nine days later. Id. at p. 4. Defendants were the providers of the Gibbs family's insurance policy, which "contained bodily injury liability limits of $300,000 per accident and property damage limits of $100,000 per accident." Id. at p. 4.

According to Plaintiff's allegations, "Kemper [at first] took possession of the Meeks' vehicle…without compensating the Meek Estates for the value of the vehicle…[in order] to avoid paying storage charges for the vehicle that were accruing daily." Id. at p. 5. Plaintiff's attorney consequently sent an email to Kemper, offering to settle at least the property damage claim for the car for $10,500, with a required response deadline of 5:00 PM the following day. Id. at p. 6. The emailed offer also conveyed Plaintiff's wishes that Kemper accept full liability for the collision. Id. Apparently, Kemper failed to respond by the deadline. Id.

On May 21, 2018 – just three days after Plaintiff's counsel sent the email – Plaintiff filed a lawsuit in Mecklenburg County Superior Court against the teenage at-fault driver and his parents for wrongful death. Id. In June 2018, Kemper allegedly offered payment for the full value of the bodily injury policy limit – $300,000 – and offered $10,500 for the property damage claim. Id. at pp. 6-7. As to the bodily injury settlement offer, Plaintiff initially refused to accept. Id. at p. 6.

With respect to the $10,500 offer for the property damage claim, Kemper allegedly paid that amount out to Plaintiff in October 2018. Id. at p. 7.

After trial on the wrongful death claim in spring 2019, "[j]udgment was entered against the Gibbs defendants…for the total sum of $3,250,000." Id. To date, Plaintiff alleges that he has collected only a small portion of that judgment. He recovered $300,000 from Kemper's payment of its full bodily injury policy limit, and he also recovered $410,079.30 from the sale of a house that Gibbs' parents transferred to Plaintiff. Id. Plaintiff contends that "Kemper refused and continues to refuse to pay any amount towards satisfaction of the [$3,250,000] Judgment entered against its insureds beyond it $300,000 bodily injury policy limit and $2,962.12 in taxable court costs." (Document No. 7, p. 5). The crux of Plaintiff's instant lawsuit, then, is "the failure of Defendant Kemper Preferred to effectuate a prompt, fair and equitable settlement of claims arising from an automobile crash in which liability had become reasonably [clear] after receiving a time[-]limited settlement demand." Id. at p. 1. In essence, Plaintiff seems to argue that Kemper owes the estates of his parents the remainder of the $3.25 million judgment entered against the Gibbs defendants in state court in the wrongful death lawsuit – that is, an amount over and above the full policy limits that Kemper has already paid out.

Plaintiff's Complaint contains two claims against Kemper: (1) for breach of contract; and (2) for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1(b). (Document No. 1-1, pp. 8-13). Plaintiff contends that its breach of contract claim rests upon two primary factual allegations: first, that Kemper failed to respond to the May 2018 settlement offer that Plaintiff communicated; and second, that Kemper failed "to effectuate prompt, fair and equitable settlements of claims against the Gibbs relating to the collision of April 4, 2018 after liability had become reasonably clear." Id. at p. 9. Plaintiff contends that he "is in

3

Case 3:21-cv-00257-RJC-DCK   Document 11   Filed 03/21/22   Page 3 of 9

privity with Kemper Preferred as a result of the $3,250,000 judgment entered against the Gibbs defendants in the tort action on June 12, 2019." Id.  Furthermore, he alleges that he "was an intended third party beneficiary" of the insurance contract between Kemper and the Gibbs.  Id.

On his UDTPA claim, Plaintiff alleges that "Defendant Kemper Preferred consciously adopted various procedures in its claims operations aimed at improving company profitability to the detriment of its policyholders and victims of the negligence of its insureds, such as the Meek Estates."  Id. at p. 10.  Plaintiff contends that this conduct was performed in bad faith and in violation of the UDTPA.  Id. at p. 11.

On June 1, 2021, Defendants removed the instant case to this Court.  See (Document No. 1).  On June 7, 2021, Defendants filed the pending "Motion To Dismiss" (Document No. 5) and their "Brief In Support Of Motion To Dismiss" (Document No. 6).  On June 21, 2021, Plaintiff filed "Plaintiff's Brief In Opposition To Defendants' Motion To Dismiss" (Document No. 7). Defendants filed "Defendants' Reply Brief In Support Of Their Motion To Dismiss" (Document No. 10) on June 28, 2021.

The pending motion is now ripe for review and a recommendation to the presiding district judge.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

At a high level, Kemper argues that Plaintiff fails to state a claim for either breach of contract or violation of the UDTPA for various reasons:

> Moving Defendants did not insure Plaintiff. Moving Defendants tendered the bodily injury limits of their insurance policy to Plaintiff approximately 60 days after the accident. Moving Defendants paid the full bodily injury limits of their insurance policy to Plaintiff after judgment was entered. Moving Defendants agreed to pay the full

5

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

At a high level, Kemper argues that Plaintiff fails to state a claim for either breach of contract or violation of the UDTPA for various reasons:

> Moving Defendants did not insure Plaintiff. Moving Defendants tendered the bodily injury limits of their insurance policy to Plaintiff approximately 60 days after the accident. Moving Defendants paid the full bodily injury limits of their insurance policy to Plaintiff after judgment was entered. Moving Defendants agreed to pay the full

5

> amount of property damage Plaintiff demanded within 90 days of the accident and issued such payment prior to a judgment being entered. Put simply, Moving Defendants did what they were supposed to do.

(Document No. 6, pp. 6-7). The undersigned will analyze Plaintiff's breach of contract and UDTPA claims in turn below.

   1. **Breach of Contract**

Defendants argue that Plaintiff's breach of contract claim should fail because Plaintiff has no standing to assert a breach of contract claim against it. (Document No. 6, p. 7). Plaintiff argues that although he is not party to the insurance contract between Defendants and the Gibbs, he is a third-party beneficiary of the contract and is therefore "in privity with Kemper Preferred as a result of the $3,250,000 judgment entered against the Gibbs defendants in the tort action on June 12, 2019." (Document No. 7, p. 8). Respectfully, the undersigned disagrees.

Defendants' arguments are persuasive, and Plaintiff's attempts to rebut such arguments fall short. Each of the cases that Plaintiff identifies to support his arguments are factually distinguishable from the present case in some way, as Defendants point out. See (Document No. 7, pp. 9 – 12); (Document No. 10, pp. 3-6). Plaintiff is correct that once he obtained a judgment against the Gibbs (Defendants' insured party), he at that point became a third-party beneficiary to the insurance contract between Defendants and the Gibbs. See Craven v. Demidovich, 615 S.E.2d 722, 724 (N.C. Ct. App. 2005). Plaintiff is *not* correct, however, that his status as a third-party beneficiary outlasts Defendants' payment of its full policy limit amount – $300,000. Indeed, the North Carolina Court of Appeals has indicated that an injured party's "privity with [the at-fault driver's insurance company] and status as a third-party beneficiary to the insurance policy existed only until [the insurance company] satisfied its contractual obligations to the extent of the

6

Case 3:21-cv-00257-RJC-DCK   Document 11   Filed 03/21/22   Page 6 of 9

insurance policy provisions." Taylor v. North Carolina Farm Bureau Mut. Ins. Co., Inc., 638 S.E.2d 636, 637 (N.C. Ct. App. 2007).

Here, just as in the Taylor case, since Kemper "pa[id] out the limits of [its] policy," Defendants "fulfilled [their] contractual obligations," removing any privity that once existed between Plaintiff and Defendants. Id. Thus, Plaintiff's breach of contract claim for the remainder of the $3.25 million judgment obtained against the Gibbs in state court must fail, just as it did in the Taylor case. Id. As Defendants state, "Plaintiff has failed to cite to a single case[] which holds that a stranger to an insurance policy remains a third party beneficiary to an insurance policy after the insurer has paid the limits of its policy." (Document No. 10, p. 6). The undersigned is aware of no case that holds what Plaintiff urges this Court to adopt. Plaintiff here has "received all that [he was] entitled to recover as [a] third-party beneficiar[y] under the insurance policy, i.e., the full measure of protection afforded by the policy within designated limits." Rowe v. United States Fidelity and Guaranty Co., 421 F.2d 937, 940 (4th Cir. 1970). The undersigned respectfully recommends that Plaintiff's breach of contract claim be dismissed.

**2. Unfair and Deceptive Trade Practices Act Claim**

The reasoning justifying the recommendation that Plaintiff's breach of contract claim be dismissed – that is, that Plaintiff is no longer in privity with Defendants since Defendants paid to Plaintiff the full amount of its policy limit – also applies to the UDTPA claim. Ordinarily, in North Carolina, claims for "violations of the UDTPA cannot be asserted by a third-party claimant against the insurer of an adverse party." Turso v. Installs, LLC, 2018 WL 6182056, at *2 (W.D.N.C. Nov. 27, 2018); see Wilson v. Wilson, 468 S.E.2d 495, 497 (N.C. Ct. App. 1996) ("North Carolina does not recognize a cause of action for third-party claimants against the insurance company of an adverse party based on unfair and deceptive trade practices under N.C.G.S. § 75-1.1"). There is

7

Case 3:21-cv-00257-RJC-DCK   Document 11   Filed 03/21/22   Page 7 of 9

an exception to this rule – if the third party can establish "privity with an insurer," then a UDTPA claim may be asserted by the third party. Id. (citing Murray v. Nationwide Mutual Ins. Co., 472 S.E.2d 358 (N.C. Ct. App. 1996)). But, any privity that once existed between Plaintiff and Defendants on account of the state court judgment in the wrongful death lawsuit has now been extinguished, as explained in the breach of contract section. Plaintiff, as a third party then, has no cognizable UDTPA claim against Defendants. The undersigned respectfully recommends that this claim be dismissed as well.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' "Motion To Dismiss" (Document No. 5) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the

objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: March 18, 2022

David C. Keesler
United States Magistrate Judge